958 P.2d 15

**SCOTTSDALE PRINCESS PARTNER-SHIP, an Arizona general partner-ship, Plaintiff–Appellant,**

**Maricopa County, a political subdivision of the State of Arizona, Defendant–Appellant,**

v.

**DEPARTMENT OF REVENUE OF THE STATE OF ARIZONA, Defendant–Appellee.**

No. 1 CA-TX 95–0020.

Court of Appeals of Arizona, Division 1, Department T.

May 22, 1997.

Review Denied June 25, 1998.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay, Michelle L. Margolies, Tempe, for Appellant Maricopa County.

Grant Woods, Attorney General by Stephen C. Lepley, Frank Boucek, III, Assistant Attorneys General, Phoenix, for Appellee Arizona Department of Revenue.

Nearhood & Associates, P.C. by Richard D. Nearhood, James R. Nearhood, Scottsdale, for Appellant Scottsdale Princess Partnership.

## OPINION

WEISBERG, Judge.

Scottsdale Princess Partnership ("SPP") appeals the Tax Court's ruling that it was not entitled to a refund for property taxes paid under protest for the tax years 1993 and 1994. Also, SPP and Maricopa County ("the County") both challenge the constitutionality of Arizona's short-lived statutory scheme for the ad valorem taxation of private taxpayers' possessory interests in lands owned by governmental entities. For the following reasons, we conclude that former Ariz.Rev.Stat. Ann. ("A.R.S.") section 42-684 violates the Uniformity Clause of the Arizona Constitution, Ariz. Const. art. IX, § 1, and that SPP is therefore entitled to a refund.

### I. FACTS AND PROCEDURAL HISTORY

SPP operates the Scottsdale Princess Resort, a 600-room resort hotel. Approximately 80% of the resort is situated on land that SPP has leased from the City of Scottsdale. For the 1993 and 1994 tax years, the Maricopa County Assessor determined that SPP's possessory interest in the leased land did not qualify as class twelve property and was not otherwise exempt or entitled to special valuation treatment pursuant to former A.R.S. sections 42-162(A)(12) and (13), 42-271.01

through 42-271.03 or 42-683 through 42-685. The assessor classified SPP's possessory interest in the land as class three (commercial) property and assessed taxes accordingly.[1] SPP paid its assessments under protest for both tax years.

SPP filed separate actions against the County and the Arizona Department of Revenue ("DOR"), charging that the assessments were illegal and seeking refunds. The County agreed that the possessory interest taxation statutes were unconstitutional but objected to SPP's request for a refund. SPP's two actions were consolidated and tried to the tax court on a stipulated statement of facts. The tax court ruled that the statutes were constitutional and therefore denied SPP any refund.

SPP and the County (collectively, "appellants") have timely appealed. This court has jurisdiction pursuant to A.R.S. section 12-2101(B). The appeal was assigned to Department T of this court pursuant to A.R.S. sections 12-120.04(G) and 12-170(C).

### II. STATUTORY BACKGROUND

In 1985 the Arizona legislature extended ad valorem property taxation to rights to possess and actual possession of land, or improvements, under non-freehold rights, which previously had been untaxed. 1985 Ariz. Sess. Laws ch. 264, §§ 1 and 2; see also A.R.S. §§ 42-681 through -686 (1991) (repealed by 1995 Ariz. Sess. Laws ch. 241, § 43 and ch. 294, § 8 (effective retroactively to January 1, 1995)). A.R.S. section 42-682 (1991) subjected such rights in the property of federal, state, county, and municipal governments and their subdivisions, defined as "possessory interests," to ad valorem taxation as unsecured personal property. A.R.S. §§ 42-681(3), -682 (1991); see generally A.R.S. tit. 42, ch. 3. A.R.S. section 42-684 (1991) expressly exempted from this tax a large variety of possessory interests in governmental property. A.R.S. section 42-685 (1991) provided valuation reduction formulas applicable in the initial eight to ten years of

---

1. SPP does not challenge the assessments against its hotel improvements, which also were assessed as class three (commercial) property.

possessory interests created in property located in slum clearance and redevelopment areas. *See* A.R.S. tit. 36, ch. 12, art 3.

In an unpublished and unappealed ruling in January 1993, the Arizona Tax Court invalidated the exemptions contained in former A.R.S. section 42–684 (1991) on the ground that Ariz. Const. art. IX, § 2, did not authorize them. *See Scottsdale Princess Partnership v. Maricopa County,* 185 Ariz. 368, 371 n. 2, 916 P.2d 1084, 1087 n. 2 (App.1995) (opinion on appeal from other rulings in same case). In the 1993 legislative session, the legislature responded to the tax court's ruling by: (1) repealing A.R.S. section 42–684 (1991); (2) adding a new class twelve to A.R.S. sections 42–162 and –227 for possessory interests to be assessed at 1% of full cash value; (3) extensively amending A.R.S. sections 42–681 through –683; (4) adding new sections 42–684 and –687; and (5) enacting a number of exemptions from the revised possessory interest tax as A.R.S. sections 42–271.01 through –271.04. *See* 1993 Ariz. Sess. Laws ch. 191.[2]

Revised A.R.S. section 42–683 adopted an alternative method of valuing class twelve property at the election of the taxpayer. It allowed the full cash value of a possessory interest in class twelve to be "determined as the capitalized value of the property based on the gross annual rental amounts paid by the holder of the possessory interest using the capitalization rate prescribed by the department and standard appraisal methods." *See* 1993 Ariz. Sess. Laws ch. 191, § 8.

Revised A.R.S. section 42–684 adopted special rules for applying the tax to certain pre-existing possessory interests on a showing of qualification. *See* 1993 Ariz. Sess. Laws ch. 191, § 10. For example, A.R.S. sections 42–684(A) and (B)(1) provided that possessory interests covering both real property and improvements that were created by leases or agreements entered into before April 1, 1985 were to be taxed according to the value of the land alone for the first twenty years of their existence.

Maricopa County brought a declaratory judgment action against the state to challenge the constitutionality of the exemptions in A.R.S. sections 42–271.01 through –271.04. On July 21, 1993, in an unpublished and unappealed ruling, the tax court determined that those sections violated Ariz. Const. art. IX, § 2. *Maricopa County v. State of Arizona,* Arizona Tax Court No. TX 93–00217.[3]

In response, the legislature adopted the possessory interest taxing scheme at issue in this appeal. *See* 1994 Ariz. Sess. Laws ch. 293. The 1994 amendment left unchanged the class twelve classification in A.R.S. section 42–162(A)(12)(c). Ariz. Sess. Laws ch. 293, § 1. The amendment added new subsections (g) through (k) providing class twelve property classification for a number of the possessory interests that had been previously exempted by A.R.S. sections 42–271.01 through 42–271.03. *Id.* The special classifications of A.R.S. sections 42–684 and –685 were left intact.

In 1995 the legislature repealed A.R.S. sections 42–681 through –687 effective retroactively to January 1, 1995. *See* 1995 Ariz. Sess. Laws ch. 294, § 8. This repeal, however, does not affect the instant case. In 1996, the legislature replaced ad valorem property taxation of possessory interests with the government property lease excise tax set forth in A.R.S. tit. 42, ch. 13. 1996 Ariz. Sess. Laws ch. 349, §§ 1(B), 5.

### III. ANALYSIS

#### A. Constitutionality of Former A.R.S. section 42–684

The Uniformity Clause of the Arizona Constitution requires that "[a]ll taxes shall be uniform upon the same class of property

---

**2.** A.R.S. section 42–271.04 was repealed by operation of statute when the tax court invalidated A.R.S. section 42–684 (1991). *See* 1993 Ariz. Sess. Laws ch. 191, §§ 5, 11, 12. The 1996 Cumulative Pocket Part to A.R.S. vol. 13 sets forth the text of former A.R.S. section 42–271.04 as having been added by "Laws 1993, Ch. 191, § 5," and notes it was conditionally repealed by Laws 1993, ch. 191, § 11, but does not indicate that the condition was in fact fulfilled in 1993. *See Scottsdale Princess,* 185 Ariz. at 371, 916 P.2d at 1087.

**3.** The legislature repealed sections 42–271.01 through—271.03 effective July 17, 1994. 1994 Ariz. Sess. Laws ch. 293, § 2.

within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only." Ariz. Const. art IX, § 1. The power to classify property for ad valorem taxation is within the discretion of the legislature. Legislative classifications for such purposes, however, must not be arbitrary, specious or fanciful. They must be reasonable and rest on real differences. *People's Finance & Thrift Co. v. Pima County,* 44 Ariz. 440, 445–46, 38 P.2d 643, 645 (1934).

■ Appellants argue, and we agree, that former A.R.S. section 42–684 created time-based subclassifications of possessory interests that violate the Uniformity Clause of the Arizona Constitution.[4] The statute provided:

A. All possessory interests in property listed in subsection B of this section that consists of both real property and improvements . . . shall be taxed as follows:

1. During the first twenty years of the possessory interest, the possessory interest shall be taxed under this article based only on the value of the land exclusive of the value of the improvements.

2. The exclusion of the value of the improvements from taxation as provided in paragraph 1 of this subsection does not apply if the possessory interest in the subject property was previously excluded, pursuant to this subsection or pursuant to prior law, for at least twenty years.

B. This section applies to the following possessory interests:

1. Leases or agreements that establish a possessory interest and that were entered into before April 1, 1985, and options and rights contained in such leases or agreements.

2. Leases entered into based on a redevelopment contract, as defined in section 36–1471, entered into before April 1, 1985.

3. Leases entered into based on an agreement for a redevelopment project for which federal grant monies have been received and that was entered into before April 1, 1985.

4. Leases issued on vacant land located at an airport owned on or before January 1, 1988 by a county having a population of four hundred thousand persons or less or by a town or city located in a county having a population of four hundred thousand persons or less if the property leased is used primarily for manufacturing, retail, distribution, research or commercial purposes. In this paragraph "commercial" includes facilities for office, recreational, hotel, motel and service uses.

1993 Ariz. Sess. Laws ch. 191, § 10.

Former A.R.S. section 42–684 thereby created two distinct subclassifications of possessory interests within each of the separate classifications established by A.R.S. section 42–162(A). The first subclass included all possessory interests within the principal class that (1) covered both land and improvements and (2) were created before April 1, 1985.[5] This subclass received the beneficial valuation treatment provided by former A.R.S. section 42–684(A). All other possessory interests in the given principal class fell into the second subclass. These were taxed without the benefit of the valuation treatment of former A.R.S. section 42–684(A).

Thus, pursuant to former A.R.S. section 42–684, possessory interests covering both land and improvements within the principal classes received preferential tax treatment if they were created before April 1, 1985. But because this time-based criterion does not relate to the nature, use, utility, or productivity of the taxed property, we conclude that it violates the Uniformity Clause. *See In re America West Airlines, Inc.,* 179 Ariz. 528, 531, 880 P.2d 1074, 1077 (1994).

In reaching this conclusion, we rely primarily upon *America West,* which held that A.R.S. section 42–705(C) (1991)[6] violated the

---

4. Appellants have also challenged the constitutionality of the entire possessory interest taxation scheme. We rejected these arguments in *Cutter Aviation, Inc. v. Arizona Department of Revenue,* 191 Ariz. 485, 958 P.2d 1 (App.1997).

5. To simplify the discussion, we disregard the fact that the relevant date for subsection (B)(4) was January 1, 1988. The precise date of differentiation does not affect our analysis.

6. Repealed by 1995 Ariz. Sess. Laws ch. 249, § 35 (effective January 1, 1995).

Uniformity Clause. A.R.S. section 42–705 had provided the standards for valuing flight property for ad valorem property taxation. A.R.S. section 42–705(A) (1991) required DOR to tax flight property at a rate equal to the sum of the average rates for primary and secondary property taxes throughout the state for the current year. However, for small airlines, defined as meeting specific system-wide average passenger or payload limits, former A.R.S. section 42–705(C) capped the annual tax at 1% of full cash value.

America West operated many aircraft in Arizona that met the alternative passenger and payload criteria of A.R.S. section 42–705(C), but its system-wide average did not. Accordingly, none of its aircraft, even those meeting the criteria, qualified for the 1% cap. America West therefore argued that former A.R.S. § 42–705(C) violated the Uniformity Clause because it taxed identical property differently depending upon the average size of the owner's aircraft, rather than upon the characteristics of the taxed property itself. Our supreme court agreed.

The court first noted that the purpose of the Uniformity Clause is to ensure that each taxpayer's property bear a just portion of the total property tax burden. *Id.* at 531, 880 P.2d at 1077. It also explained that, although creating classifications for property tax purposes was within the discretion of the legislature, those classifications must be delineated by relevant characteristics of the property itself, not by extraneous facts or circumstances. *Id.*

> [C]lassifications for taxation purposes must be real, not fanciful, and based on the nature of the property or on some other real difference in its use, utility or productivity.... Thus, identical or similar property put to different uses or used for the same purpose in different industries may be put in different classifications. Howev-

er, similar property used in the same industry for the same purpose cannot be classified differently for ad valorem taxation simply because of the size, wealth, or location of its owner.

*Id.* at 535, 880 P.2d at 1081. Thus, any classification for ad valorem property taxation must be based upon the nature, use, utility, or productivity of the taxed property.[7] The supreme court concluded that the classification in A.R.S. section 42–705 did not meet this standard because

> the statute penalizes America West for the number or value of its possessions (airplanes). Thus, we have an ad valorem tax graduated, not by differences in the property or its use, but by differences in the nature of other property belonging to the owners, a distinction that, if approved, would seemingly read the uniformity clause out of the Arizona Constitution.

*Id.* at 533, 880 P.2d at 1079.

Similarly, we conclude that the possessory interest subclassifications created by former A.R.S. section 42–684 were based upon an impermissible criterion, the date on which the interest was created, and therefore violate the Uniformity Clause.[8]

## B. *Remedy*

■ SPP requests a refund of the possessory interest taxes it paid for 1993 and 1994 as a result of the constitutional infirmities in the possessory interest taxing scheme. SPP contends that the amount of the refund should put it on par with the taxpayers that benefitted from the favorable classification, i.e., the difference between the taxes SPP actually paid on its possessory interests and the amount it would have paid had it qualified for the lower assessment value of A.R.S. sections 42–684 and –685.

---

7. Appellants narrowly read *America West* to hold that a classification is acceptable only if it is based on the property's "use, utility, or productivity." We rejected this argument in *Cutter,* 191 Ariz. 485, 958 P.2d 1 (App.1997), concluding that *America West* permitted classifications based upon the inherent nature of the taxed property.

8. In view of our holding, we need not consider appellants' challenge to the constitutionality of A.R.S. § 42–685, covering possessory interests located in "redevelopment areas," or former A.R.S. section 42–162(A)(12)(a), covering leases or permits for lands under the jurisdiction of the State Land Department.

The County argues that SPP is not entitled to a refund because our ruling should be prospective only or, alternatively, that any refund should be measured by the seemingly miniscule difference between what SPP actually paid and what it would have paid had the unconstitutional classifications not existed.[9] We conclude that SPP is entitled to the refund it requests.

In *McKesson v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court addressed what remedies were available, consistent with due process, to a taxpayer who successfully challenges an unconstitutionally discriminatory tax. *McKesson* involved a Florida liquor excise tax that discriminated in favor of beverages manufactured from certain Florida agricultural crops and bottled in Florida. The Florida courts had invalidated the tax scheme on Commerce Clause grounds but denied any relief for the taxes paid by the taxpayer who had successfully challenged the tax. The Supreme Court held that the denial of such relief violated due process: "If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a post-payment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 31, 110 S.Ct. at 2247 (footnote omitted).

The Court described three options available to a state that had collected an unconstitutionally discriminatory tax:

the State may cure the invalidity of the Liquor Tax by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received. Alternatively, to the extent consistent with other constitutional restrictions, the State may assess and collect back taxes from petition-er's competitors who benefitted from the rate reductions during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme.

*Id.* at 40, 110 S.Ct. at 2252 (citations omitted). The third option merely allows a state to apply a combination of the first two options, i.e., a partial refund and a partial retroactive assessment. *Id.* at 41, 110 S.Ct. at 2252–53.

The Court specifically rejected Florida's argument that no refund should be awarded because "had it known that the Liquor Tax would be declared unconstitutional, [it] would have imposed the higher flat tax rate on all distributors [and] petitioner would have paid the same tax under this hypothetical scheme as it did under the Liquor Tax." *Id.* The Court held that this reasoning ignored the gravamen of the harm—that the "purpose and effect [of the tax] was to impose a relative disadvantage on a category of distributors[,] . . . not [that] its treatment of this category of distributors diverged from some fixed substantive norm." *Id.* at 42, 110 S.Ct. at 2253. Because the tax was discriminatory and conferred a competitive advantage, the remedy must actually eliminate the discrimination. *Id.* at 43, 110 S.Ct. at 2253–54. Accordingly, we reject the County's argument that SPP is not entitled to a refund because, even without the unconstitutional sub-classifications, its possessory interests would have been taxable as class three (commercial) property. *Cf. Scottsdale Princess Partnership v. Maricopa County*, 185 Ariz. 368, 376, 916 P.2d 1084, 1092 (App.1995) (denying refund to SPP for successfully challenging unconstitutional *exemptions* in possessory interest taxation scheme: "[T]he fact that other businesses have been given [unconstitutional] exemptions . . . does not make the tax on [SPP's] property invalid—that simply shows that others are not entitled to the benefits they have received.").[10]

9. The County also argues that, because the trial court did not consider the appropriate refund (since it found no constitutional infirmity), we should not address the issue. We disagree. While we remand for a calculation of the correct amount of refund, it is appropriate to address whether a refund is available to SPP and how such refund should be measured because these are purely legal issues that were fully argued to the trial court.

10. In *Scottsdale Princess*, we based our denial of a refund on the fact that the unconstitutional

We also decline to apply *McKesson*'s second option of permitting the county to assess retroactive taxes on those taxpayers that qualified for the unconstitutional special treatment in A.R.S. sections 42–684 and –685 and thereby paid lower taxes than SPP. This court recently rejected this remedy in a case involving a tax statute declared unconstitutional as a special law. *See Tucson Elec. Power Co. v. Apache County,* 185 Ariz. 5, 26 n. 15, 912 P.2d 9, 30 n. 15 (App.1995). We concluded that the remedy was "harsh and oppressive," raised significant due process concerns, and was not requested by the taxpayer. *Id.* For the same reasons, and because the County has not indicated that it would be willing to take such steps, we reject retroactive assessments as a remedy here.

Moreover, the instant case is analogous to *Gosnell Dev. Corp. v. Arizona Dep't of Revenue,* 154 Ariz. 539, 744 P.2d 451 (App.1987), in which Division Two of this court granted a refund to a taxpayer that successfully challenged DOR's enforcement of a tax statute on equal protection grounds. The plaintiff taxpayer, Gosnell, paid the correct amount of tax, but other taxpayers did not due to DOR's discriminatory collection practices. Although Gosnell had paid the correct amount of taxes, the court nevertheless held that it was entitled to a refund:

> There can be no question that under applicable case law, Gosnell has been the victim of unconstitutional discrimination. That unequal treatment must be remedied. In the numerous cases in which a taxpayer was adjudged to have been deprived equal protection under the law as a result of unequal tax treatment, the taxpayer's remedy is that which places him on a par with the favored taxpayers.

*Id.* at 542, 744 P.2d at 454 (citing *Iowa–Des Moines Nat'l Bank v. Bennett,* 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931)); *see also County of Maricopa v. North Central Dev. Co.,* 115 Ariz. 540, 566 P.2d 688 (App.1977) (affirming award of refund to taxpayer who, though paying correct amount of taxes, proved discriminatory enforcement by DOR

that violated uniformity and equal protection principles).

SPP has been the victim of similar unconstitutional discrimination, although via a uniformity rather than equal protection violation. The appropriate remedy for such discrimination is a refund in the amount necessary to make its tax burden uniform with that of the unconstitutionally favored taxpayers; that is, a refund of the difference between the amount of taxes SPP actually paid and the amount it would have paid had it qualified for the special treatment in former A.R.S. sections 42–684 or –685. *Cf. Tucson Elec.,* 185 Ariz. at 27, 912 P.2d at 31 (rejecting this measure of refund because taxpayer had not requested it). Accordingly, we remand for a determination of the proper amount of refund under this measure.

## IV. ATTORNEYS' FEES

SPP requests an award of attorneys' fees on appeal pursuant to A.R.S. section 12–348(B). We grant the request. SPP may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## V. CONCLUSION

The judgment is reversed and remanded with directions to enter judgment granting SPP a refund in accordance with this opinion, together with any other specific relief that may be necessary to enable the appropriate Maricopa County taxing officials to adjust their taxing records for SPP in accordance with this opinion.

GARBARINO, P.J., and TOCI, V.C.J., concur.

---

exemptions did not result in a discriminatory tax. 185 Ariz. at 376, 916 P.2d at 1092. The offending exemptions were not for similarly situated

taxpayers and therefore violated neither the Equal Protection Clause nor the Uniformity Clause. *Id.* That is not the case here.