IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

MACHU PICCHU HOLDINGS, LLC, et al.,
*Plaintiffs/Appellants,*

*v.*

PINAL COUNTY, et al.,
*Defendants/Appellees.*

RUSTIN WAYAS, et al.,
*Plaintiffs/Appellants,*

*v.*

YAVAPAI COUNTY, et al.,
*Defendants/Appellees.*

Nos. 1 CA-TX 21-0003, 1 CA-TX 21-0007
(Consolidated)
FILED 3-16-2023

Appeal from the Arizona Tax Court
Nos. TX2019-001718, TX2020-000846
The Honorable Danielle J. Viola, Judge

**REVERSED AND REMANDED**

COUNSEL

Mooney, Wright, Moore & Wilhoit, PLLC, Mesa
By Jim L. Wright, Paul J. Mooney, Paul Moore, Bart S. Wilhoit
*Counsel for Plaintiffs/Appellants*

Pinal County Attorney's Office, Florence
By Scott M. Johnson
*Counsel for Defendant/Appellee Pinal County*

DeConcini McDonald Yetwin & Lacy, P.C., Tucson
By James M. Susa
*Counsel for Defendants/Appellees Pinal County and Yavapai County*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries, Lisa Neuville
*Counsel for Defendant/Appellee Arizona Department of Revenue*

---

**OPINION**

Judge D. Steven Williams delivered the opinion of the court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass[1] joined.

---

**W I L L I A M S**, Judge:

¶1        Arizona's property tax scheme tasks counties with levying and collecting property taxes on real property within county limits. When modifications or changes to a parcel of real property are made, the method by which a county values that property for tax purposes can also change—significantly affecting the amount of tax levied. *See* A.R.S. § 42-13302. This case requires us to examine whether a county may use a "neighborhood system" to determine the limited property value of a parcel. We hold that the neighborhood system violates A.R.S. § 42-13302 and, therefore, reverse and remand.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Several property owners in Pinal County and Yavapai County (collectively, "the Taxpayers") brought these consolidated actions against their respective counties and the Arizona Department of Revenue ("the Department") to recover property taxes allegedly collected illegally. The Taxpayers contend the county assessors valued their properties in a discriminatory manner in violation of A.R.S. § 42-13302; the Uniformity

---

[1] Vice Chief Judge David B. Gass replaces Judge Peter B. Swann, who was originally assigned to this panel. Judge Gass has read the briefs, watched the recorded oral argument, and reviewed the record.

Clause of the Arizona Constitution, Article 9, Section 1; the Equal Protection Clause of the Arizona Constitution, Article 2, Section 13; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

¶3 The Arizona Constitution authorizes the levying and collection of taxes. *See* Ariz. Const. art. IX. The formula by which Arizona calculates property tax is comprised of four general elements: (1) classification, (2) valuation, (3) assessment ratio, and (4) tax rate. *Aileen H. Char Life Int. v. Maricopa Cnty.*, 208 Ariz. 286, 291, ¶ 8 (2004). Exercising its constitutional power to classify property for tax purposes, *Apache Cnty. v. Atchison, T. & S. F. Ry. Co.*, 106 Ariz. 356, 359 (1970); *People's Fin. & Thrift Co. v. Pima Cnty.*, 44 Ariz. 440, 445 (1934), the legislature established statutory classes of real property. A.R.S. §§ 42-12001 to -12009 (creating separate classes for residential, rented residential, agricultural and other types of real property). The legislature delegated to counties the authority to levy and collect real property taxes. A.R.S. § 42-13051. For most property in Arizona, a county assessor values the property, A.R.S. § 42-13051, multiplies the valuation by an assessment ratio—dictated by the legislative classification—to produce the assessed value, A.R.S. §§ 42-15001 to -15010, and then applies the applicable tax rate to the property's assessed value to determine the amount of tax due.

¶4 Each year, the county assessor must determine both the full cash value ("FCV"), A.R.S. § 42-13051(B)(2), and the limited property value ("LPV"), A.R.S. §§ 42-13301 and -13302, for real property within county limits. The FCV, which is "synonymous with market value," is "derived annually by using standard appraisal methods and techniques." A.R.S. § 42-11001(6). The LPV, which is the basis for assessing and levying primary and secondary property taxes, A.R.S. § 42-11001(7), is determined through two methods. A.R.S. §§ 42-13301 and -13302.

¶5 The first method, commonly known as "Rule A," generally applies when no changes to a property would affect its value. A.R.S. § 42-13301; *Premiere RV & Mini Storage LLC v. Maricopa Cnty.*, 222 Ariz. 440, 442, ¶ 4 (App. 2009). Under Rule A, the LPV is "the [LPV] of the property in the preceding valuation year plus five percent of that value," so long as that value does not exceed the property's current FCV. A.R.S. § 42-13301(A)-(B). In periods of rapidly rising property values, Rule A prevents a corresponding rapid rise in LPV. *Premiere RV*, 222 Ariz. at 442, ¶ 4.

**¶6** The second method, commonly known as "Rule B"—at issue in this appeal—generally applies when there have been changes to a property (such as by construction, destruction, demolition, or changes in the property's use) that affect its value. A.R.S. § 42-13302. Under Rule B, a property's LPV is established "at a level or percentage of full cash value [referred to as the "Rule B Ratio"] that is comparable to that of other properties of the same or a similar use or classification." A.R.S. § 42-13302(A); *Premiere RV*, 222 Ariz. at 442, ¶ 4. In other words, a property's LPV is calculated by multiplying the property's FCV by the applicable Rule B Ratio. *See* A.R.S. § 42-13302. In the following tax years, the LPV established under Rule B is used to calculate the parcel's LPV under Rule A. *See* A.R.S. § 42-13301(A).

**¶7** Here, the Taxpayers own real property in Pinal and Yavapai Counties. County assessors applied Rule B Ratios to the Taxpayers' properties in 2018 (Pinal County) and 2019 (Yavapai County). The Taxpayers challenged the methods employed by Pinal and Yavapai Counties, contending that the Rule B Ratios applied to their properties were greater than the Rule B Ratios applied to other properties within the same property classification. We address each county's method separately.

*Pinal County*

**¶8** To calculate LPV, the county first places real property into one of six categories. The six categories—agricultural, commercial, personal, residential, rented residential, and vacant—generally correspond to the statutory property classifications established by the legislature in A.R.S. §§ 42-12001 through -12009. The county then further divides the properties in each class by location, creating more than 100 "neighborhoods."

**¶9** Within each neighborhood, the assessor establishes a unique Rule B Ratio for each property class based on the relationship between the FCVs and LPVs of similar properties for which LPVs are determined under Rule A. Upon establishing the Rule B Ratios for each property class within each neighborhood, the assessor calculates each property's LPV based on the Rule B Ratio assigned to its class. Using this formulation, properties within the same class—but located in different neighborhoods—have different Rule B Ratios. The figure below illustrates the broad range of Rule B Ratios applied in 2018 and shows what the Rule B Ratios would have been for each class had Pinal County used a countywide system rather than a "neighborhood" system.

| Rule B Class | Countywide Rule B Ratio | Range of Rule B Ratios Using Neighborhood System |
|---|---|---|
| Agricultural | 71% | 59% to 94% |
| Commercial | 93% | 73% to 100% |
| Residential | 82% | 73% to 97% |
| Rented Residential | 83% | 70% to 96% |
| Vacant Land | 82% | 20% to 100% |

*Yavapai County*

¶10 Yavapai County employs a substantially similar method for determining properties' LPV, although it applies a countywide Rule B Ratio to all agricultural property and divides the county into seven geographic areas, referred to as "Market Areas." As in Pinal County, properties within the same class—but located in different Market Areas—have different Rule B Ratios.

*This Proceeding*

¶11 Following the assessments in 2018 (Pinal County) and 2019 (Yavapai County), the Taxpayers filed complaints against the counties alleging their methods for valuing LPV discriminated against them by violating A.R.S. § 42-13302; the Uniformity Clause of the Arizona Constitution, Article 9, Section 1; the Equal Protection Clause of the Arizona Constitution, Article 2, Section 13; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Apart from seeking a refund of the allegedly illegal taxes collected from them in 2018 and 2019, respectively, the Taxpayers asserted that the counties miscalculated their properties' valuations in all subsequent tax years by relying on the unlawful LPVs from 2018 and 2019.

¶12 The tax court resolved these issues in favor of the counties on cross-motions for summary judgment in each case. The Taxpayers timely appealed. Because both cases raise the same legal issue, we consolidated them on appeal, without objection from the parties. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), -161(A).

**DISCUSSION**

¶13 We review de novo a tax court's ruling on cross-motions for summary judgment. *See Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182

Ariz. 196, 198 (1995). We also review statutory interpretation de novo. *Pinal Vista Prop., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 6 (App. 2004).

**¶14**        Arizona's Uniformity Clause mandates that "all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." Ariz. Const. art. IX, § 1. Although the Constitution extends the legislature broad power to classify property, *People's Fin. & Thrift Co.*, 44 Ariz. at 445, thereby permitting property being divided into different classes "to be taxed at different rates," *In re America West Airlines, Inc.*, 179 Ariz. 528, 531 (1994), it requires taxing authorities to levy uniform taxes against the same class of property within a taxing unit. Here the taxing units are the counties.

**¶15**        Acting within its constitutional authority, the legislature established a statutory system to identify and categorize real and personal property in Arizona. A.R.S. §§ 42-12001 to -12009. This system was created "for the common treatment of the property in each class for purposes of the assignment of a common assessment percentage." A.R.S. § 42-12010(A); *see also In re America West*, 179 Ariz. at 531 (explaining that "property of the same character must be taxed the same.").

**¶16**        Apart from creating statutory property classifications, the legislature prescribed the methods by which property must be valued. A.R.S. § 42-13051(B)(2) (FCV); A.R.S. § 42-13301 (Rule A LPV); A.R.S. § 42-13302 (Rule B LPV).

**¶17**        This case requires us to consider whether Arizona law permits counties to establish and apply different Rule B Ratios to real property of the same class when the individual properties are located in different parts of the same county.

**¶18**        As subdivisions of the state, counties "have only such legislative powers as have been expressly, or by necessary implication, delegated to them by constitution or by the legislature." *City of Phoenix v. Ariz. Sash, Door & Glass Co.*, 80 Ariz. 100, 102, *amended on reh'g*, 80 Ariz. 239 (1956). "These powers will be strictly construed." *Id.*, 80 Ariz. at 102.

**¶19**        In interpreting a statute, we "look first to the statute's words," *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 199 (App. 1997) (quoting *In re Denton*, 190 Ariz. 152, 155 (1997)), and "when the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation," *Pinal Vista Prop.*, 208 Ariz. at 190, ¶ 10; *see also Bowslaugh v. Bowslaugh*, 126 Ariz. 517, 519 (1979) (explaining that we "leav[e] any deficiencies or inequities to be corrected by the legislature.").

Applying a plain reading, we construe "statutes relating to the same subject or having the same general purpose" together "as though they constituted one law." *Pinal Vista Prop.*, 208 Ariz. 190, ¶ 10 (internal quotation omitted). Our interpretation is guided by the principle that tax statutes are to be interpreted "strictly against the state," with "any ambiguities . . . resolved in favor of the taxpayer." *Wilderness World*, 182 Ariz. at 199. We endeavor to harmonize statutes with the Arizona Constitution, "avoiding any unconstitutional construction." *See Fragoso v. Fell*, 210 Ariz. 427, 431–32, ¶ 13 (App. 2005).

¶20 Section 42-13302 provides that a property's Rule B LPV "shall be established at a level or percentage of full cash value that is comparable to that of other properties of the same or a similar use or classification."

¶21 Asserting that A.R.S. § 42-13302 requires only that "similar use property be comparable," the counties argue the neighborhood system is permissible because the statute "is not specifi[c] as to whether the similar use property must be on the same street, within the same neighborhood . . . or within some other specific area in the [c]ounty." But as noted, *supra* ¶ 6, the "level or percentage of full cash value" is the Rule B Ratio. A.R.S. § 42-13302. Accordingly, the Rule B Ratio must be "comparable to that of other properties of the same or a similar use or classification." *Id.* Meaning, the Rule B Ratios of property within the same classification must be comparable.

¶22 We next consider whether the Rule B Ratio "of other properties of the same a similar use or classification" can be determined based on the property's location. *See id.*

¶23 In doing so, we are guided by the "presumption that what the [l]egislature means, it will say." *Padilla v. Indus. Comm'n*, 113 Ariz. 104, 106 (1976). Section 42-13302 requires that the Rule B Ratio be determined based on other properties of the same or similar "use or classification." The legislature has plainly said the only property classifications are those listed in A.R.S. §§ 42-12001 to -12009. Location is not a classification embodied in those statutes, and "we will not imply classifications that the legislature has not expressed." *In re America West*, 179 Ariz. at 534 (noting the power to classify is legislative); *see also Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102 (explaining that counties only have the powers delegated to them by the legislature or constitution).

¶24 The counties further argue that this court should defer to the Department's historical practice of establishing Rule B Ratios on a

neighborhood basis. We recognize that, several years ago, the Department computed Rule B Ratios for thirteen of Arizona's fifteen counties, and at times used a neighborhood system to establish Rule B Ratios in those counties. However, the Department informs it neither currently determines Rule B Ratios for any Arizona county nor does it currently "instruct county assessors with respect to the geographic areas that they should use when determining the Rule B [R]atios."

**¶25**        Applying A.R.S. § 42-13302's plain language, the neighborhood system is not permitted. We, therefore, accord no deference to the Department's past interpretation and application of the statute. *See S. Pac. Co. v. Cochise Cnty.*, 92 Ariz. 395, 406 (1963) ("We . . . cannot countenance the wil[l]ful, systematic and intentional violation of the law no matter how long continued.").

**¶26**        Because we conclude the neighborhood system violates A.R.S. § 42-13302, we need not determine whether such system violates the Arizona or the United States Constitutions.

*Attorneys' Fees and Costs*

**¶27**        The Taxpayers request their attorneys' fees and costs on appeal under A.R.S. § 12-348(B). We grant their requests subject to the Taxpayers' compliance with Arizona Rule of Civil Appellate Procedure 21.

**¶28**        The Department seeks exemption from the award of fees and costs in 1 CA-TX 21-0003 (Pinal County) on the basis that the Department "had nothing to do with the matters that [the Taxpayers] raised in their complaint" and "played no material role in defending th[e] case below." But the Department did defend the case, to some degree, asking the tax court to deny the Taxpayers summary judgment motion. And it appears the Department initiated the neighborhood system in the 1980's, which it used to calculate Rule B Ratios for Pinal County up until 2010.

**¶29**        We award the Taxpayers attorneys' fees and costs against both the Department and the counties. The Department did not file an answering brief in 1 CA-TX 21-0007 (Yavapai County). We therefore consider any argument regarding attorneys' fees and costs in that case waived. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977).

## CONCLUSION

¶30 For the foregoing reasons, we reverse the decision of the tax court and remand this case for further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED:   AA